125 N. W. 310.

---

FRED MITCHELL v. KNUDTSON LAND COMPANY, A CORPORATION, AND O. A. KNUDTSON.

Opinion filed January 21. 1910.

**Pleading—Proof Not Required on Points Admitted in Pleadings.**

1. An allegation in a complaint for the specific performance of a contract for the sale of real estate, that "O. A. Knudtson was the duly and authorized agent of the Knudtson Land Company," admitted to be true in answer, is sufficient, without proof that such agent had authority to bind his principal by his contract to sell real estate.

**Compromise and Settlement—Pleading.**

2. Evidence of a settlement of a cause of action set forth in a complaint is not admissible under a general denial.

**Vendor and Purchaser—Contract—Offer and Acceptance.**

3. An offer in specific terms, and without conditions, for the purchase of a tract of land made by letter or telegram, unconditionally accepted, becomes a binding contract.

**Statute of Frauds—Specific Performance — Possession, Improvement and Part Payment.**

4. The fact that the requirements of the statute of frauds have not been complied with in making a contract for the sale of real estate will not defeat an action for the specific performance of such contract, where the vendee has been placed in possession of the land under the contract and has made valuable improvement and has paid part of the purchase price.

**Principal and Agent—Contract of Principal in Agent's Name—Right of Principal to Enforce.**

5. A contract of a vendee for the purchase of real estate, made through his agent in his own name, without stating the name of his principal, may be enforced by an action for specific performance by such principal in his own name.

**Evidence—Proof of Agency by Letters.**

6. Evidence consisting of letters written by an agent on behalf of his principal, received in evidence without objections, is sufficient, prima facie, to establish an authorized agency.

**Specific Performance—Scope of Remedy — Jurisdiction — Award of Damages.**

7. In an action for the specific performance of a contract to convey real estate, where the facts show a failure and refusal to specifically perform the contract, the court may retain jurisdiction of the action and award damages, and thus determine the controversy without putting plaintiff to the expense and delay of another action.

**Evidence—Vendor's Inability to Make Title—Purchaser's Knowledge.**

8. Evidence considered, and held not to show that plaintiff knew, when contract was entered into, or when suit was begun, that defendants were unable to convey by a sufficient deed.

Appeal from District Court, McLean county; *Winchester, J.*

Action by Fred Mitchell against the Knudtson Land Company and another. Judgment for plaintiff, and defendants appeal. Affirmed.

*J. T. McCulloch* and *Newton & Dullam,* for appellants.

Memorandum of sale must disclose the parties to the contract. Wood on Statute of Frauds, 693 Sec. 358; Browne on Statute of Frauds, 471; White v. Breen, 32 L. R. A. 127; Louisville v. Lorick, 2 L. R. A. 212, and note; Beckwith v. Talbott, 24 L. Ed. (U. S.) 496, Grafton v. Cummings, 25 L. Ed. 366.

Connection of several writings to make a contract, must be shown on their face. Tice v. Freeman, 15 N. W. 674; Morton v. Stone, 39 N. W. 496.

When a plaintiff knows at the commencement of his action that specific performance cannot be had, his case should be dismissed. Morgan v. Bell, 16 L. R. A. 614; Lewis v. Yale, 4 Fla. 438; Doan v. Mauzey, 33 Ill. 227; Sellers v. Greer, 172 Ill. 549, 40 L. R. A. 589; Kempshall v. Stone, 5 John Ch. 193; Kennedy v. Hazelton, 32 L. Ed. (U. S.) 576; Morse v. Etmendorf, 11 Paige 277; Milkman v. Ordway, 106 Mass. 232; Welty v. Jacobs, 40 L. R. A. 98; Baldwin v. Fletcher, 12 N. W. 873; Morgan v. Bell, 16 L. R. A. 614.

*J. E. Nelson* and *Theodore Landmann,* for respondent.

Statute of frauds cannot be used as an instrument of fraud. 8 Am. & Eng. Enc. (1st Ed.) 737.

Morgan, C. J.   This is an action for the specific performance of a contract for the purchase of real estate. The complaint alleges that the Knudtson Land Company is a corporation organized under the laws of Minnesota. In the negotiation of the contract, the Casey Land Company acted as the agent of the plaintiff, and the defendant, O. A. Knudtson, acted as the agent of the defendant corporation. The contract relied on in the complaint was entered into through telegrams and letters, and some of these letters and telegrams are set forth in the complaint to show that a contract was entered into through such correspondence. As such letters and telegrams will be considered with the merits, and their contents set forth in the opinion, they will not now be further referred to. The complaint further alleges that the plaintiff went into possession of the land under such contract, with the consent of the defendants, and that he has been ever since, and now is in possession of such land. He further alleges in the complaint his readiness and willingness to fulfill said contract by the payment of the balance of the purchase price, and that he has offered to perform all of the conditions on his part to be performed in said contract, but that the defendants have refused to comply with said contract by conveying the premises to him. The relief demanded is that the defendants be compelled to specifically perform such contract by conveying the land to this plaintiff, and if the defendants, or either of them, cannot comply with the terms of said contract by executing a good and sufficient deed to plaintiff, then that the defendants pay

to the plaintiff the sum of $1,120 damages sustained by reason of the failure of defendants to specifically perform said contract of sale. The answer is a general denial, except the express admission of allegations 1 and 2 of the complaint, which relates to the corporate capacity of the defendant company and the agency of the defendant, O. A. Knudtson for the defendant company. The district court made findings of fact and conclusions of law favorable to the plaintiff upon all of the issues. Defendants have appealed from a judgment entered pursuant to such findings and demand a review of the entire evidence under the provisions of section 7229 Rev. Codes 1905.

In the complaint it is alleged that the defendant Knudtson was the "duly authorized agent of the Knudtson Land Company," and this allegation is expressly admitted in the answer. It is now claimed by the appellants that there is no proof in the record showing that Knudtson was authorized in writing so as to empower him to bind the Knudtson Land Company by contract for the sale of this real estate. Under our statute an agent for the sale of real estate must be authorized in writing by his principal before the act or acts of the agent in making a sale of land on his behalf will be binding upon him. The objection to that allegation was not raised by demurrer. Hence it should be more liberally construed against the objection now urged. Without intimating that the allegation would be insufficient if attacked by demurrer, we are satisfied that it is sufficient when objected to for the first time in this court or at the trial. The contention of the appellants that the purpose and extent of the agency must be pleaded in cases like the present cannot be sustained. The allegation that Knudtson was the "duly and authorized agent of the Knudtson Land Company" should be construed as stating that he was a duly and regularly authorized agent of said company for all purposes in connection with the transaction set forth in the complaint. By admitting such allegation to be true, it must be admitted to be an admission of such agency with full authority in the premises. This court has recently held that an allegation in a complaint that a contract was entered into between parties will be presumed to be a legal contract, and in writing, if a written contract is necessary for the purposes of the contract. Hanson v. Svarverud, 18 N. D. 550, 120 N. W. 550. The same principle is applicable here. The

general allegation of an authorized agency will be presumed to be an agency with full powers legally conferred. If the allegations were insufficient, however, it could avail nothing to defendants, as no objection was taken to the offer of letters in evidence, written by the defendant corporation through Knudtson as agent, which was based upon the ground that the authority of Knudtson was not shown. Such letters and contracts are therefore in the record unobjected to. It also appears in the record that the corporation, by its trustees or executive committee, authorized Knudtson to accept the offer submitted on behalf of the plaintiff for this land, and that such executive committee or trustee authorized Knudtson to go to New York to procure a deed thereof for the plaintiff. This testimony was also admitted without objection that it was not the best evidence of the fact. This evidence was in the form of a conversation between Knudtson and the plaintiff, and in that conversation Knudtson stated that the trustees or executive committee of the defendant corporation had given him authority to accept the offer made on behalf of Mitchell. This was proof of the fact that the company had authorized Knudtson to accept the offer, and was sufficient for all purposes so long as no objection was made thereto as to its competency. It was proof of an official act of the corporation, through its trustees, and was entirely separate from proof of agency. We therefore find the first contention of the appellants untenable upon grounds clear and satisfactory.

It is claimed that no contract was entered into between these parties. As stated, negotiations were conducted through letters and telegrams. It therefore becomes a question of law whether the minds of the parties met as to the transaction. In other words, it is a question of law whether a contract was entered into. We find in the record an unconditional proposition in writing from the plaintiff through his agent for the purchase, upon definite terms, of the land in suit. This offer was accompanied by a check of $50 as part payment. This check was cashed by Knudtson, and the money retained from February 23, 1906, to June 25, 1906. This offer was made by letter on February 23, 1906. The terms of the offer were taken from a circular letter or list of the lands which the defendants had placed with the Casey Land Agency for sale. On February 27th, the defendant company, by a letter written by the defendant Knudtson, stated: "I am inclined to think

your proposition for the N. W. 27-145-82 will be accepted. Will let you know in a day or two." Before the plaintiff again heard from the defendants in respect to this offer, the plaintiff's agent, at the request of the plaintiff, modified the offer of February 23d to the effect that cash would be paid for the land upon the terms stated in the circular letter or list that had been placed for sale with Casey & Co. by the defendants. This modification was an unconditional one. Plaintiff requested a reply by wire or mail, but none came until March 29th, which was in answer to the following telegram to Knudtson at Minneapolis: "Must close or reject the proposition N. E. 27. Wire J. M. Casey." The answer to Casey from Knudtson was as follows: "We can put through deal for you. Waiting for papers."

On April 3d, the plaintiff, through his agent, wrote as follows: "O. A. Knudtson, Minneapolis, Minn.—Dear Sir: We received your telegram in answer to ours re N. E. 27-145-82, stating that the deal would go through without a hitch. We have therefore advised purchaser to go onto the land and begin his improvements thereon. We trust that you may be able to rush the papers through in a very short time. Yours truly, Casey Land Company."

On April 19th, the Knudtson Land Company, through O. A. Knudtson, wrote the Casey Land Company concerning this matter as follows: "I herewith return your check 110, dated Feb. 23d, 1906, as I notice same is made payable to you without endorsement. Kindly endorse same and return to me."

On April 21st, the Casey Land Company wrote O. A. Knudtson as follows: "Dear Sir: "We return herewith your check for $50.00, properly endorsed, and trust that you will get the papers for the N. E. ¼, 27-145-82 fixed up in a very short time. Our purchaser has gone onto the land and is now engaged in making his improvements in breaking the land. Hence we should be pleased to have the matter in shape before any considerable expense attaches to the land in that way. If there is any reason why he should not go ahead with such improvements, will you please notify us at once thereof. Trusting that you will push this matter with all reasonable dispatch, we are,"

In answer to this, defendant wrote as follows: "Minneapolis, Minn. 4-24-06. Casey Land Company, Underwood, N. Dak.—Gentlemen: We are in receipt of yours of the 24th inst. with check

attached, and would say that I can see no good reason why the party should not go ahead as suggested in your letter. Yours truly, Knudtson Land Company, pr. O. A. Knudtson.

On June 25th, defendants wrote as follows: "The Casey Land Company, Underwood, N. Dak.—Gentlemen: Enclosed we return check for $50.00, your favor, being amount accompanying the application for the sale of N. E. ¼, 27-145-82, your application having been turned down. Yours truly, Knudtson Land Company, per O. A. Knudtson."

The last letters was answered by the plaintiff's agent, stating that they were in no way authorized by the plaintiff, Mr. Mitchell, to accept the return of the money. They returned the check and stated in the letter that Mr. Mitchell would expect them to perform their part of the contract and to deliver said land to him pursuant thereto. We have no hesitation in saying that the offer to purchase the land was accepted as shown by the correspondence and acts of the defendants. By such acceptance, the contract became complete. The cash payment sent with the offer was retained for about four months without explanation before it was returned to the plaintiff, who promptly refused to accept it, and sent it back to defendants, who have retained it ever since. The telegram of March 29 was an unconditional acceptance. It said: "We can put through deal for you. Waiting for papers." It gave plaintiff and his agents to understand, unequivocally, that nothing remained to close the deal but the arrival of the papers.

More conclusive than this as showing that the offer was accepted is the letter of April 24th, saying: "I can see no good reason why the party should not go ahead as suggested in your letter." This referred to going into possession of the land under the contract and making improvements thereon in reliance upon receiving a conveyance of the land pursuant to the contract. These letters show conclusively, it seems to us, that the defendants and the plaintiff's agents understood that the offer was accepted without conditions. If defendants did not intend to ac cept the offer they were guilty of most unfair, if not fraudulent, conduct in encouraging a belief on the part of the plaintiff, that it was safe for him to go into possession and make large expenditures in improvements. There is no attempt to deny that defendants gave plaintiff permission to go into possession. The

plaintiff's act, and permission to go into possession of the land, considered together, show that a definite contract was entered into between the parties for the sale of the land in question.

The trial court decreed a specific performance of the contract, and if such performance was refused, that damage be awarded to plaintiff. Defendants were given 30 days after service of a copy of the order for specific performance, during which to comply with such order, by conveying the land to the plaintiff. Upon proof of the service of such order, and the failure to comply therewith, the court awarded a judgment in plaintiff's favor, and against the defendants, for the sum of $1,120. Appellants claim that such judgment is unauthorized and " a perversion of the process of the court of equity." Many authorities are cited on this point, but they are inapplicable as not based upon facts like those in this case.

The appellants assert that plaintiff knew, from the start, that defendants were unable to convey this property. The record shows that the defendant held this land under a contract for its purchase which included other land, and the defendants' vendors refused to deed the land in suit unless the whole contract was complied with by paying the balance due on all land included in the contract. There is no showing that defendant cannot secure the conveyance of this land upon making such payment. If the defendants were unable to make such payments, that is not a showing of such inability to convey as would afford some reason for not conveying, which would warrant a court of equity in withholding its decree for specific performance. The most that can be said in this case is that it might be inconvenient for the defendants to arrange matters so that a conveyance can be given to plaintiff. The facts show that the defendants have refused to convey to plaintiff, pursuant to the contract, and this is sufficient to warrant a decree compelling a specific performance. There is no basis for the contention of the appellants that the plaintiff ever knew or now knows that the defendants were or are without ability to convey. Having refused to convey, and the plaintiff not knowing that the defendants could not convey, when the contract was entered into or when the suit was commenced, a court of equity cannot decree specific performance so as to satisfy the contract, as the defendants have only an equitable title, and such title is incumbered by liens for the pur-

chase price of such land and other land included within the contract. This, we think, is a fair inference from the evidence upon this point. In view of this evidence, the rule is well established that a court of equity should not dismiss this equitable action and remand the plaintiff to a court of law to secure his damages. The rule is well stated in Pomeroy on Contracts, (2d Ed.) 474, as follows: "All the instances in which equity thus awards damages, either in place of or in addition to some other special remedy, are particular applications of the one general principle, that complete justice should be done between litigant parties whenever jurisdiction has been acquired over them to grant any relief. This doctrine is well established, and is indeed, too familiar to require the citation of authority that whenever a court of equity has once acquired jurisdiction of a cause it will retain such cause in order to do full and complete justice between the parties with respect to the subject matter. To this end, when jurisdiction has been obtained on other grounds and for the purpose of administering an equitable remedy, damages may be assessed and adjudged in lieu of or as ancillery to the equitable relief so that the plaintiff may not be put to the trouble, expense, and delay of a second suit brought in another tribunal."

It is urged that the contract is not enforcable for the reason that it was invalid under the statute of frauds. The defect urged is that the letters and telegrams do not disclose the name of the principal for whom the Casey Land Company was acting until after the contract was repudiated. In other words, it is claimed that there was no sufficient memorandum or writing. Several cases are cited by the appellants tending to support the doctrine that the memorandum or writing necessary before a contract for the sale of real estate becomes binding must contain the name of a vendee, and that parol evidence is not admissible to supply such defect. We do not think that such cases are in point under the facts of this case. The pivotal question in this case is whether a contract for the sale of real estate was entered into. It is found that a contract was entered into between the Casey Land Agency, acting for the plaintiff, and the defendants. Upon its face, the contract is the contract of the Casey Land Agency, and it is signed by that company, but its benefits inure to the plaintiff, although his name was not therein mentioned, and he may

sue in his own name for the enforcement of it.   In Pomeroy on Contracts (2d Ed.) 89, the doctrine is stated as follows: "When the agreement is executed by an agent in his own name, he appearing to be the contracting party, the requisite as to parties is complied with.   The principal may maintain a suit and enforce the contract, and it is immaterial whether the principal was actually known during the transaction or whether the other party supposed that he was dealing with the agent personally, entirely on his own behalf.   Under the same circumstances, it is now the rule that a suit may be maintained, and the contract enforced against the principal even though he was undisclosed and unknown to the other party at the time of entering into the agreement, provided, of course, it was actually made on his behalf."   Although this is not the rule followed in some courts, we deem it sound, and many cases containing it are cited in the note to the above section. If such principle were not sustainable in this state, it could have no application in this case, as it is undisputed that the plaintiff went into possession of the land in reliance on the contract and made valuable improvements.   Therefore, under the express exception to the provisions of the statute of frauds as contained in section 5407, Rev. Codes 1905, the absence of the requirements of that statute is not a defense to an action for specific performance.   For these reasons, there is no force in defendant's contention as to the invalidity of the contract upon this ground.

On June 18th, the Casey Land Agency submitted another different offer for the same land to the Knudtson Land Company This is brought forward by the appellants as conclusive proof that neither plaintiff nor the Casey Land Company believed that their first offer had been accepted.   Unexplained, this fact would have great force as proof, and might be deemed conclusive.   However, from the evidence explanatory of the second offer, it is shown that this was an independent offer by the Casey Land Agency, and that the plaintiff is in no way connected therewith. It was not made on his behalf, and there is nothing in the letter indicating that it was made on his behalf.   Mr. Casey testifies that this offer was submitted on his own individual account, and it appears that it was made after it had become apparent that the defendants were not willing to comply with the contract, although the defendants had not tendered a return  of  the  $50  at  this

time, or plaintiff's negotiations and attempts at settlement had ceased, and it was an established fact that the defendants would refuse to comply with the offer of the plaintiff, which had been accepted. Under such circumstances, this new offer has no force as evidence that the plaintiff thought that the contract had never been entered into.

It is claimed that the subject-matter of this action was by the parties settled on the 18th day of June, 1906. A memorandum of settlement was signed by the plaintiff in person and by O. A. Knudtson in person. The Knudtson Land Company is not mentioned in the memorandum, and there is no mention therein of any suit or action, and no direct mention of the subject-matter of the action. The substance of the agreement on the part of Knudtson is as follows: "That the right and title of and to the crop now growing upon the N. E. ¼, section 27, 145-82, shall be and remain in the party of the second part (Mitchell), and guarantee and protect said second party in said right. To pay in addition thereto, and does hereby pay, the sum of $100.00, and to further guarantee that the crops raised and grown upon said land shall equal to the reasonable expense of labor performed and seed sown on said land, and, if not, to pay the said second party the balance of said expense, not to exceed the sum of $50.00. Said second party does hereby release said O. A. Knudtson from any and all claims arising out of labor performed on said land, and all other claims of every nature." Under this contract a check for $100 was turned over to the plaintiff. He retained this money from that day until November 1st, when he purchased a draft for the same and sent to Knudtson, with the following letter:

"Washburn, N. Dak., Nov. 1, 1906. Mr. O. A. Knudtson, Minneapolis, Minn. Dear Sir: You are hereby notified that I have this day deposited to your credit the sum of $100.00, the same being the amount received from you on or about the 17th day of June, A. D. 1906, by virtue of a certain contract entered into by and between Fred Mitchell and O. A. Knudtson, relative to the N. E. ¼, Sec. 27 in township 145, in range 82, west of the 5th P. M. The said deposit is a tender of the said money and a return thereof by the said Fred Mitchell, being made in the First National Bank of Washburn, N. Dak. Signed and dated this first day of November, A. D. 1906. Fred Mitchell, by J. E. Nelson."

If the settlement is binding so far as the issues of this case are concerned, it is by virtue of the last part of the memorandum, reciting, "and all other claims of every nature." From other evidence it appears that the defendants had not repudiated the contract when the memorandum was entered into. The letter of the defendants to the plaintiff's agent of May 25th proves this fact conclusively. As there was no breach of the contract when the memorandum was entered into, it is not apparent how it could be included in the settlement, unless specially shown to be included therein. However, we need not place the decision on this point on that ground. It is disposed of on the ground that the memorandum is not properly in evidence. A settlement of a cause of action pleaded in the complaint cannot be proved under a general denial. The fact of such settlement presents an affirmative defense which must be specifically averred. That was not done in the answer; for the reason it is not properly before us for consideration. Plaintiff objected to its admission in evidence on the express ground that it had not been pleaded.

It is claimed by the appellants that such memorandum as properly offered in evidence for the purpose of showing the character and basis of the plaintiff's possession, and that it was offered in evidence for that purpose by the defendant as a part of the plaintiff's cross-examination. If it was offered in evidence for a particular purpose, the offer should have been restricted to that ground or purpose. A reading of the memorandum, however, shows that it was silent on the question of possession. The character of the possession and the circumstances under which it was taken are clearly shown by other evidence, and this memorandum or contract in no way changes or refers to it. Furthermore the parties seem to have acted in reference to this contract in such a manner as to imply that it was waived or rescinded by mutual consent. It is true that the plaintiff retained the $100 paid at the time of the execution of this contract until the letter was written on November 1st, when it was returned. The defendants made no objection to the letter of November 1st, and did not offer to return the money to plaintiff until at the trial, nearly three months thereafter, when the plaintiff refused to accept it. It would seem that the defendant acquiesced, by such long delay, in the intention or wish of the plaintiff to rescind the contract. Whereas the evidence is not at all conclusive upon this point, we think that a fair

inference from it is that the defendants by such long delay did not rely upon that contract as having any bearing upon the issues in this case. Whether such delay and the retention of the money returned would be deemed a rescission of the contract so far as the rights to the crop are concerned, we do not determine. We are clearly of the opinion, however, that the contract has no force or bearing upon the issues as to whether this suit was settled or not. ' The trial court awarded interest on the damages in the sum of $58.80. Respondent consents to modification of the judgment by striking out that sum, being interest up to the date of the entry of judgment.

The judgment is affirmed. All concur.